JGW/USAO#2011R00452

FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

CLERK'S OFFICE
AT BALTIMORE

BY _____ DEPUTY

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA | * **UNDER SEAL** |
| v. | * |
|  | * CRIMINAL NO. RDB-14-0186 |
| **RICHARD BYRD,** | * |
| a/k/a "Robert Smith," | * (Conspiracy to Distribute and Possess |
| **RASAN BYRD,** | * with Intent to Distribute Cocaine and |
| **KIMBERLY REID,** | * Marijuana, 21 U.S.C. § 846; |
| **JAMES BOWIE, and** | * Conspiracy to Launder Money, 18 |
| **RICHARD DRUMMOND** | * U.S.C. § 1956(h); Forfeiture, 18 U.S.C. |
|  | * § 982; 21 U.S.C. 853(a)(1)) |
| **Defendants.** | * |

\*\*\*\*\*\*\*

## SUPERSEDING INDICTMENT

### COUNT ONE

The Grand Jury for the District of Maryland charges that:

1. From in or about 2009 through the date of this Superseding Indictment, in the State and District of Maryland, Arizona, Texas, California, Ohio, Georgia, and elsewhere,

**RICHARD BYRD, a/k/a "Robert Smith,"
RASAN BYRD,
KIMBERLY REID,
JAMES BOWIE, and
RICHARD DRUMMOND**

the defendants herein, did unlawfully, wilfully and knowingly combine, conspire, confederate, and agree with each other and with persons known and unknown to the Grand Jury to unlawfully, knowingly and intentionally distribute and possess with intent to distribute five kilograms or more of a mixture or a substance containing a detectable amount of cocaine, a Schedule II controlled substance, and one thousand kilograms or more of a mixture or substance containing a detectable amount of marijuana, a Schedule I controlled substance, in violation of Title 21, United States Code, § 841.

21 U.S.C. § 846

## OBJECT OF THE CONSPIRACY

2. It was the object of the conspiracy that quantities of cocaine and marijuana were obtained from sources of supply in Arizona, Texas, and California and sold for the financial gain of members of the conspiracy in Maryland, Ohio, Georgia and elsewhere.

## MANNER AND MEANS OF THE CONSPIRACY

3. Among the manner and means used by the defendants and other co-conspirators to carry out the object of the conspiracy were the following:

a. It was part of the conspiracy that members obtained large quantities of cocaine and marijuana from various sources of supply located primarily in Arizona, Texas and California with the intention that said cocaine and marijuana be distributed in Maryland, Ohio, Pennsylvania, Georgia, and elsewhere.

b. It was further part of the conspiracy that members, including **RICHARD BYRD, RASAN BYRD,** and Jerome Castle organized a drug distribution network (hereinafter the 'Byrd drug organization') which provided for the acquisition, transportation, and distribution of cocaine and marijuana. **KIMBERLY REID and JAMES BOWIE** conducted financial transactions and engaged in activities designed to launder the monetary proceeds from the sale of cocaine and marijuana. **RICHARD DRUMMOND,** among other duties, collected large sums of money generated from the sale of cocaine and marijuana.

c. It was further part of the conspiracy that members utilized freight companies to ship drugs obtained in Arizona and elsewhere to distribution points in Baltimore, Maryland, Ohio, Pennsylvania, Georgia, and elsewhere.

d. It was further part of the conspiracy that members sold cocaine and marijuana and

derived large amounts of United States currency from those sales. These monetary proceeds were then laundered through various bank accounts and businesses, or were transported in bulk back to the sources of supply for the drugs, often as payment for the purchase of additional quantities of drugs.

    e. It was further part of the conspiracy that members utilized false and fictitious names and identities in order to open bank accounts through which drug proceeds were laundered, to contract for goods and services, and to conceal their true identities from law enforcement.

    f. It was further part of the conspiracy that members utilized Greendot Prepaid Debit Cards through which drug proceeds were laundered, to purchase goods and services, and to conceal their true identities and the nature and extent of their assets from law enforcement.

    g. It was further part of the conspiracy that members who were arrested and charged with violations of law as a result of their illegal activities were provided with legal counsel paid for by other conspirators in order to discourage cooperation with law enforcement and to further conceal the activities of the conspiracy.

    h. It was further part of the conspiracy that monies generated from the sale of cocaine and marijuana were concealed by members of the conspiracy from law enforcement and not disclosed to state or federal taxing authorities.

    i. It was further part of the conspiracy that 'mules' and 'couriers' were utilized to transport monetary proceeds from drug sales in cities such as Baltimore to Arizona, Texas, Nevada, and California in suitcases and other types of luggage.

    j. It was further part of the conspiracy that members acquired, stored, and utilized firearms to protect the drugs and monetary proceeds from theft.

    k. It was further part of the conspiracy that members acquired and utilized warehouses,

residences and other locations to facilitate the storage, packaging and distribution of marijuana and cocaine, and engaged in counter-surveillance designed to discover law enforcement presence and thus protect the activities of the 'Byrd drug organization.'

l. It was further part of the conspiracy that members were provided with instructions as to what each should do and say in the event they were confronted or arrested by members of law enforcement.

m. It was further part of the conspiracy that some of its members enriched themselves from the proceeds of drug sales and used portions of those proceeds to live in expensive homes and apartments, to purchase luxury automobiles, jewelry, and other expensive consumer items.

n. It was further part of the conspiracy that members purchased luxury automobiles, jewelry, and other expensive consumer items used other persons to conduct those transactions, and often placed title to automobiles in the names of third-parties in order to conceal true ownership.

o. It was further part of the conspiracy that members utilized multiple disposable and pre-paid telephones and frequently changed phones and phone numbers in an attempt to avoid law enforcement scrutiny.

p. It was further part of the conspiracy that members, when conducting meetings, typically required that batteries be removed from cell phones and other measures taken to prevent such meetings from being recorded.

q. It was further part of the conspiracy that members and their associates were encouraged to contact a representative paid by RICHARD BYRD in the event said conspirators were contacted by law enforcement. This representative gathered information about law enforcement activities and inquiries, and reported this information to RICHARD BYRD so he could monitor law enforcement activities.

## OVERT ACTS

4. In furtherance of the conspiracy, and to effect the object thereof, the defendants named above, and others known and unknown to the Grand Jury, participated in and committed the following acts, among others, in the District of Maryland and elsewhere:

a. On or about August 31, 2009, Najah Stewart checked luggage containing $85,000 in United States currency for a flight scheduled to depart BWI Airport en route to LA/Ontario International Airport, California.

b. On or about September 1, 2009, the representative of RICHARD BYRD contacted law enforcement officials and sought details of the seizure of $85,000 in currency from the luggage of Najah Stewart.

c. On or about October 26, 2009, RICHARD BYRD traveled via plane from Baltimore, Maryland to Los Angeles, California, using a fictitious Maryland driver's license in the name of Erol Alaeddin Ozinal, and was in possession of $20,000 in United States currency.

d. On or about February 21, 2010, RICHARD BYRD, using the alias of Robert Smith, began utilizing account No. 39417137 at Bank of America.

e. On or about or March 1, 2010, RICHARD BYRD identified himself as Robert Smith to police officers in Los Angeles, California, when BYRD was found in the vicinity of Banner Packing and Crating as police seized 150 pounds of marijuana.

f. On or about March 9, 2010, RICHARD BYRD, using the alias of Robert Smith, opened account No. 457017876650 at a Bank of America branch located in Scottsdale, Arizona.

g. Between March 2010 and January 2011, thirty cash deposits totaling approximately $161,000 were made into account No. 39417137 held in the name of Robert Smith at Bank of America.

h. Between March 10, 2010 and February 2011, thirty-seven cash deposits totaling approximately $160,000 were made into account No. 457017876650 held in the name of Robert Smith at Bank of America.

i. On or about February 26, 2010, Jerome Castle, using the alias of Dontwon Burris, began utilizing account No. 004464104360 at Bank of America.

j. Between March 17, 2010 and August 2012, fifty-two cash deposits totaling approximately $230,000 were made into account No. 004464104360 held in the name of Dontwon Burris at Bank of America.

k. On or about June 9, 2010, RICHARD BYRD and Maurice Jones were stopped by police in Avondale, Arizona while inside a rented Enterprise box truck. BYRD identified himself as Robert Smith and presented a fictitious Arizona driver's license in that name. The inside of the truck smelled of marijuana and contained approximately thirteen large, but empty, black plastic containers.

l. On or about February 17, 2011, RICHARD BYRD negotiated in Chandler, Arizona, for the purchase of approximately 2,700 pounds of marijuana. BYRD brought with him a 'Swiss

Gear' roller suitcase containing approximately $267,000 in currency to consummate the purchase and he inspected a sample of the marijuana. When arrested, BYRD identified himself as Robert Smith and presented a fictitious California driver's license in that name.

m. On or after February 17, 2011, RICHARD BYRD, while incarcerated, instructed Stacie Stewart via telephone to discontinue the use of telephones they had been using and to be mindful of police surveillance.

n. On or after February 17, 2011, Kimberly Reid delivered to the Maricopa County Jail in Phoenix, Arizona, two checks totaling approximately $150,000 drawn on her accounts to serve as bail and secure the release of RICHARD BYRD from custody.

o. On March 7, 2011, RICHARD BYRD was present at 5346 E. Royal Palm, in Scottsdale, Arizona, when police officers recovered approximately $749,000 in currency from two 'Swiss Gear' roller suitcases.

p. On or about April 12, 2011, RICHARD BYRD was present at 9500 Sidebrook Road, Owings Mills, Maryland, when police officers recovered approximately $40,000 in currency from the premises.

q. On or about May 28, 2011, Yvonne Castle-Taylor, the mother of RICHARD BYRD attempted to carry approximately $100,000 in currency as she attempted to fly to Montego Bay, Jamaica.

r. On or about July 19, 2012, RICHARD BYRD met with Cecil McCalla in the vicinity of the Corner Bakery located on Reisterstown Road in Baltimore, Maryland, and BYRD gave McCalla a sum of money.

s. On or about July 19, 2012, RICHARD BYRD met with Jerome Castle at a gas station on Belmont Avenue in Baltimore, Maryland.

t. On or about July 30, 2012, RICHARD BYRD and RASAN BYRD were present in a residence at 8941 West Montevista Road, Phoenix, Arizona when police officers recovered approximately $372,000 in currency from the attic of the premises, and seized more than 20 cellular phones.

u. On or about August 25, 2012, RICHARD BYRD met with Jerome Castle in the vicinity of the Marriott Waterfront Hotel in Baltimore, Maryland. BYRD removed a large black plastic bag from a vehicle occupied by CASTLE and handed the bag to a third person.

v. On or about August 26, 2012, RICHARD BYRD met with JAMES BOWIE at the Renaissance Hotel in Baltimore, Maryland.

w. On or about October 11, 2012, a private investigator hired by RICHARD BYRD conducted surveillance outside the residence of an Arizona law enforcement officer who was then conducting a narcotics and financial investigation of BYRD and his associates.

x. On or about January 8, 2013, Thurston Lindsey confronted a police officer conducting surveillance of drug-related activities in the vicinity of 8114 W. Cooledge Drive, Phoenix, Arizona, and asked the officer why he was in the area.

y. On or about January 29, 2013, RASAN BYRD met with Thurston Lindsey in the parking lot of a supermarket located in Phoenix, Arizona.

z. On or about March 12, 2013, Maurice Jones, using fictitious identification in the name of Charles Roberson, deposited $65,000 in currency at a Bank of America branch in Reisterstown Road, Baltimore, Maryland. The deposit was made after Jones met with Josef and Harold Byrd, conspirators and relatives of RICHARD BYRD, in the parking lot of the bank.

aa. On or about April 17, 2013, RASAN BYRD met with Thurston Lindsey in the parking lot of a Jack in the Box restaurant located on Indian School Road in Phoenix, Arizona.

bb. On or about April 18, 2013, Thurston Lindsey delivered several large boxes to Airpark Pack-n-Ship located on N. Scottsdale Road, Scottsdale, Arizona.

cc. On or about April 21, 2013, RICHARD BYRD traveled via airplane from Baltimore, Maryland to Phoenix, Arizona. Once arriving in Phoenix, BYRD was in telephone contact with RASAN BYRD and Thurston Lindsey.

dd. On or about April 22, 2013, Thurston Lindsey delivered two large boxes to Airpark Pack-n-Ship located on N. Scottsdale Road, Scottsdale, Arizona.

ee. On or about April 22, 2013, RASAN BYRD twice confronted a police officer conducting surveillance of drug-related activities in the vicinity of 8223 W. Hazelwood, Phoenix, Arizona, and asked the officer why he was in the area.

ff. On or about April 22, 2013, premises at 8223 W. Hazelwood, Phoenix, Arizona were utilized by RASAN BYRD and others to store, wrap and prepare drugs for shipment. Law enforcement officers recovered from the premises an industrial wrapping machine, a wrapping table, two large drums of Valvoline motor oil, stacks of large cardboard boxes, large rolls of cellophane, bags of packing peanuts, large black trash cans and other materials suitable for the packaging of marijuana and cocaine. Hand-written ledgers with weights consistent with drug-trafficking and an airline receipt in the name of Thurston Lindsey were also recovered from the premises.

gg. On or about April 22, 2013, Thurston Lindsey was stopped by police officers in Phoenix, Arizona, who recovered approximately 233 pounds of marijuana from the vehicle Lindsey was driving.

hh. On or about April 22, 2013, Thurston Lindsey delivered boxes containing drugs to Airpark Pack-n-Ship by in Scottsdale, Arizona. Police officers recovered approximately 527

pounds of marijuana and 16 kilograms of cocaine from those boxes, which were to be shipped to a destination in Baltimore, Maryland.

ii. On or about April 22, 2013, Josef Byrd, Harold Byrd, Jerome Castle and Maurice Jones took delivery of approximately 342 pounds of marijuana concealed inside large black plastic containers, which had been shipped from Airpark Pack-n-Ship in Scottsdale, Arizona.

jj. On or about April 22, 2013, Josef Byrd utilized a residence at 9010 Rock Ledge Court, Owings Mills, Maryland and stored thereat, among other things, approximately five kilograms of cocaine and fictitious means of identification.

kk. On or about April 22, 2013, Harold Byrd utilized a residence at 2923 Merrymans Mill Road, Phoenix, Maryland and stored thereat, among other things, approximately five kilograms of cocaine, fictitious means of identification, three handguns, an AK-47 assault rifle, body armor, and over seventy large black plastic containers which had been used to ship and conceal quantities of marijuana.

ll. On or about April 22, 2013, Jerome Castle utilized a residence at 312 Archimedes Court, Pikesville, Maryland and stored thereat, among other things, seven handguns, approximately $57,900 in currency, jewelry valued at approximately $411,000, a money counter, scales, and other items utilized to package drugs for distribution.

mm. On or about May 16, 2013, Detre Val made cash withdrawals totaling $120,000 from several Wells Fargo branches in Los Angeles, California.

nn. On or about May 17, 2013, Detre Val and RASAN BYRD attempted to withdraw $40,000 in cash from a Wells Fargo branch in West Covina, California.

oo. In or about August of 2013, RICHARD BYRD occupied a room at the Holiday Inn Express located in Laurel, Maryland, which was registered in the name of RICHARD

DRUMMOND.

pp. In or about August of 2013, RICHARD BYRD and RICHARD DRUMMOND utilized the same Honda Accord in and around Laurel, Maryland.

qq. On or about September 6, 2013, a vehicle in which RICHARD BYRD was a passenger was stopped by police in Frederick County, Maryland and police seized approximately $6,000 in currency and observed in excess of 20 cellular telephones inside the vehicle. An Arizona driver's license in the name of Richard Christopher Byrd, which contained a fictitious residential address in Phoenix, Arizona, was found in the car.

rr. On or about September 10, 2013, RICHARD DRUMMOND took delivery of a white trash bag at a gas station in Cincinnati, Ohio, and thereafter drove to a Family Dollar store and purchased a bag of rubber bands.

ss. On or about September 11, 2013, RICHARD DRUMMOND was in possession of approximately $96,500 in currency when he was stopped by police in Ohio. The currency was separated into bundles which were held together by rubber bands.

tt. On or about September 12, 2013, RICHARD BYRD met with RICHARD DRUMMOND at a restaurant in Laurel, Maryland.

uu. On or about October 29, 2013, RICHARD DRUMMOND was in possession of approximately $58,000 in currency, along with approximately 27 cellular phones, and an airline boarding pass in the name of RICHARD BYRD when he was stopped by police in Phoenix, Arizona.

vv. Between July 2012 and July 2013, KIMBERLY REID made cash deposits to a business bank account utilized by conspirators totaling approximately $545,000.

ww. Between November of 2010 and April 22, 2013, approximately 88 shipments

containing marijuana and/or cocaine were sent from Airpark Pak-N-Ship in Scottsdale, Arizona to addresses in Baltimore, Ohio, Pennsylvania, and Georgia controlled by RICHARD BYRD and members of the conspiracy.

xx. On or about April 29, 2014, RICHARD BYRD was detained by law enforcement in Phoenix, Arizona, and found to be in possession of a Louisiana State Identification card and a pre-paid American Express card in the name of Ebunoluwa Akinola.

## COUNT TWO

The Grand Jury for the District of Maryland further charges that:

From in or about 2009 and continuing through the date of this Superseding Indictment, in the District of Maryland, Arizona, California, Texas, and elsewhere,

**RICHARD BYRD, a/k/a "Robert Smith,"
RASAN BYRD,
KIMBERLY REID,
JAMES BOWIE, and
RICHARD DRUMMOND**

did knowingly, intentionally, and unlawfully combine, conspire, confederate and agree with each other, and with others known and unknown to the Grand Jury, to knowingly engage, attempt to engage, and cause others to engage in monetary transactions, in and affecting interstate and foreign commerce, in criminally derived property that was of a value greater than $10,000, and was derived from specified unlawful activity, that is, the distribution of controlled substances, in violation of 18 U.S.C. §1957.

18 U.S.C. §1956(h)

## **FORFEITURE**

The grand jury further finds that:

1. Pursuant to Title 21 U.S.C. § 853(a), upon conviction of Count One of the Indictment, the defendants shall forfeit to the United States of America:

    a. any property constituting, or derived from, any proceeds obtained, directly or indirectly, as the result of such violation, and

    b. any property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such violation;

including, but not limited to, a sum of money in the amount of at least $20,000,000.

2. Pursuant to Title 21 U.S.C. § 982(a)(1), upon conviction of Count 2 of the indictment, the defendants shall forfeit to the United States all property, real and personal, involved in the offense, and any property traceable to such property.

## SUBSTITUTE ASSETS

If any of the property described above, as a result of any act or omission of the defendants:

a. cannot be located upon the exercise of due diligence;

b. has been transferred or sold to, or deposited with, a third person;

c. has been placed beyond the jurisdiction of the Court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be subdivided without difficulty;

the United States of America shall be entitled to forfeiture of substitute property pursuant to 21 U.S.C. § 853(p), as incorporated by 28 U.S.C. § 2461(c) up to the value of the property listed above, including but not limited to the following:

a. All right, title and interest in the real property held in the name of Merr Group, LLC., including, but not limited to the following properties:

   i.  4406 Findlay Avenue, Baltimore, Maryland 21206
   ii.  825 Wildwood Parkway, Baltimore, Maryland 21229
   iii.  3445 Harwell Avenue, Baltimore, Maryland 21213
   iv.  5205 Craig Avenue, Baltimore, Maryland 21212
   v.  3031 Westfield Avenue, Baltimore, Maryland 21214
   vi.  3102 Belmont Avenue, Baltimore, Maryland 21216
   vii.  1221 McAdoo Avenue, Gwynn Oak, MD 21207
   viii.  4213 Pimlico Road, Baltimore, MD 21215
   ix.  3337 Elmley Avenue, Baltimore, MD 21213

 b. All right, title and interest in the real property held in the name of Taylor Investment Ventures LLC., including, but not limited to the following properties:

   i.  3001 SE 6th Avenue, Fort Lauderdale, FL 33316
   ii.  404 SE 30th Street, Fort Lauderdale, FL 33316

 c. All right, title and interest including, but not limited to, any interest in the following businesses:

   i.  Loc Marketing LLC, located at 1328 U Street, NW, Suite 3W, Washington, DC 20009
   ii.  Griffin Night Club, located at 50 Gansevoort Street, New York, New York
   iii.  Gold Room, located at 2416 Piedmont Road, NE, Atlanta, Georgia 30324
   iv.  Fever Beverage, located at 200 Four Falls Road, Corporate Center Suite #100, West Conshohocken, Pennsylvania 19428

 d. All right, title and interest in the following assets, accounts and holdings:

   i.  United States currency in the amount of $267,000, more or less, seized from Richard Byrd on or about February 17, 2011;
   ii.  United States currency in the amount of $749,000, more or less, seized from 5346 E. Royal Palm Road, Paradise Valley, Arizona, on or about March 7, 2011;
   iii.  United States currency in the amount of $18,000, more or less, seized from a 2002 Chevrolet Suburban, VIN#1GNEC16ZX2J306541, on or about February 17, 2001;
   iv.  United States currency in the amount of $40,000, more or less, seized from 9500 Sidebrook Road, Owings Mills, Maryland, on or about April 12, 2011;
   v.  United States currency in the amount of $372,000, more or less, seized from 8941 West Montevista Road, Phoenix, Arizona, on or about July 30, 2012;
   vi.  United States currency in the amount of $6,000, more or less, seized from Richard Byrd in Frederick County, Maryland, on or about September 6, 2013;
   vii.  United States currency in the amount of $96,500, more or less, seized from

    Richard Drummond in Ohio, on or about September 11, 2013;
 viii. United States currency in the amount of $58,000, more or less, seized from Richard Drummond in Phoenix, Arizona, on or about October 31, 2013;
 ix. A 2007 Mercedes Benz, VIN#WDDNG71X17A044685;
 x. A 2008 Mercedes Benz CLS 550, VIN# WDDDJ72X28A129550
 xi. A 2010 Can Am Spyder Motorcycle, VIN#2BXJADA16AV000230;
 xii. A 2002 Chevrolet Suburban, VIN#1GNEC16ZX2J306541;
 xiii. A 2007 Mercedes Benz SL550, VIN#WDDNG71X47A032840.

18 U.S.C. §982(a)(1)
21 U.S.C. §853(a)
21 U.S.C. §2461(c)
Fed. R. Crim. P. 32.2.(a)

_[signature]_
Rod J. Rosenstein
United States Attorney

**SIGNATURE REDACTED**  7-24-14

Foreperson     Date